**Randall Eugene BROOKS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–91–144–CR.**

Court of Appeals of Texas, Fort Worth.

June 24, 1992.

Discretionary Review Refused Sept. 30, 1992.

David L. Richards, Fort Worth, Daryl Coffey, for appellant.

Tim Curry, Crim. Dist. Atty., C. Chris Marshall, Asst. Dist. Atty., Chief of the Appellate Section, Charles M. Mallin, Richard Alpert, Brenda Smith, Asst. Dist. Attys., Fort Worth, for appellee.

Before WEAVER, C.J., and FARRIS and LATTIMORE, JJ.

## OPINION

WEAVER, Chief Justice.

Appellant, Randall Eugene Brooks, appeals from his conviction of aggravated sexual assault on the victim, Jane Doe ("Jane"). Enhanced by two prior convictions, the jury assessed punishment at life imprisonment. We affirm.

Appellant brings four points of error, the first three of which concern the introduction into evidence over objection of an audio tape of Jane's 911 phone call to police following her brutal attack. Appellant complains that the trial court abused its discretion in this regard because: 1) any relevance of the tape was outweighed by its potential prejudicial effect; and 2 & 3) the State failed to lay the proper predicate for admission of the tape because the State failed to show the correctness of the recording equipment and the authenticity of the tape, and failed to identify all voices. Under appellant's fourth point, he complains that the trial court erred in excluding him from a hearing conducted to determine whether he had made threats to disrupt the trial proceedings.

On September 24, 1989, Jane was subjected to a two hour brutal sexual assault in which she was beaten, raped, sodomized, and robbed. Jane was unable to identify appellant because of her mental state and the darkness of her bedroom, although she did give a general description of her assailant. Her assailant, circumstantially proven to be appellant, left Jane bound and stole her car, $94 in cash, a black leather belt, and a pistol. Appellant was found in Oklahoma City driving Jane's car with the pistol under the front seat.

As relevant to appellant's first three points, Jane was able to convince appellant not to take her with him after the assault because she would not be able to identify him. With her feet bound with torn sheets and her hands tied behind her back, Jane successfully rolled toward the phone knocking the receiver off the hook. She then used her chin to get an operator, who, in turn, connected her with the 911 operator, Ms. Smith. This twenty minute conversation, automatically recorded on tape, led officers to her rescue.

Outside the jury's presence, and after listening to the tape, the trial court requested defense objections to the introduction of the tape. Appellant's objections were that the tape was "highly prejudicial" and that "it is so prejudicial that the probative value of it can be—it's so prejudicial that it has no probative value." Also, appellant objected that this tape would do nothing but "just inflame and impassion the jury." The State responded that since Jane was unable to identify her assailant, her state of mind at the time of the act was very important as to why she could not identify him; thus, its probative value outweighed any prejudicial affect it may have on the jury. Although the trial court would not allow introduction of the transcript that accompanied the tape, it allowed introduction of the tape under TEX.R.CRIM. EVID. 803. The trial court did not specifically elaborate as to which section under rule 803 the tape was being admitted.

The State called Ms. Smith, the police dispatcher who took Jane's call, to the stand. Ms. Smith identified the tape as being an accurate reflection of the call from Jane on September 24, 1989. The appellant took Ms. Smith on voir dire, and elicited from her that she did not make this tape, nor was it her job to make sure the equipment was operating properly that night. Then appellant further objected to introduction because "no proper predicate has been laid as to the sound recording equipment or the authenticity of it." The objection was overruled and the tape was played to the jury. The appellant further *objected while the tape* was being played to "this unidentified voice on this tape."

There was no more discussion in the trial court pertaining to any unidentified voice on the tape. The objection was overruled and the tape was played to its conclusion.

Under appellant's first point of error, appellant complains that it was error to allow introduction of the 911 tape because any relevancy of the tape was outweighed by its potential prejudicial effect. We disagree.

■ Having set out appellant's objection above as relating to this point, we interpret his objection at trial as only preserving on appeal the issue of whether the probative value of the 911 tape was substantially outweighed by the danger of unfair prejudice. *See* TEX.R.CRIM.EVID. 403. Appellant here goes to great lengths in arguing relevancy of the tape, but his arguments to us do not comport with his trial objections. We hold that the contents of the 911 tape was relevant under TEX.R.CRIM.EVID. 401.

■ Appellant contends that since the sole defense theory advanced at trial was that appellant was not the person who attacked Jane, the effect of the tape was that it diverted the jurors' attention from the identity of the attacker to the extent to which the victim suffered. However, Jane did not accuse or identify appellant on the tape. It was only a report of the crime to the extent that a black man had entered her home and brutally subjected her to acts previously set out. The tape revealed sobbing, incoherent pleadings for Ms. Smith to stay on the line, and some typical conversation as to what her address was. Additionally, the tape showed Jane's hysterical state of mind and her fear that appellant would show back up before police could rescue her. It is apparent that this evidence adequately explained her state of mind and a relevant reason why Jane would not and could not positively identify her attacker. We hold that the probative value of the 911 tape was not substantially outweighed by the danger of unfair prejudice to appellant, and overrule appellant's first point of error.

■ Under appellant's second and third points of error, he contends that the State

failed to lay the proper predicate for admission of the 911 tape by failing to show the correctness of the recording equipment and the authenticity of the tape, and in failing to identify a voice allegedly audible on the tape. Appellant relies on *Edwards v. State*, 551 S.W.2d 731, 733 (Tex.Crim.App. 1977), which provides the seven step test for admissibility of recordings. He argues that the State's predicate in the instant case was far too cursory as to *Edwards* authenticity and voice identification prongs. *Id.*

We note that although *Edwards* indicates a reasonably strict adherence to the requirements, at least some of these requirements for admissibility can be inferred from the testimony. *Edwards*, 551 S.W.2d at 733. Focusing on the elements in dispute, Ms. Smith testified that all 911 calls are automatically recorded, and the device, which automatically "kicks in" when the dispatcher's phone is answered, was capable of making audio recordings. Ms. Smith stated that she had listened to the tape, that there were no deletions or additions, and it accurately reflected the conversation in question with Jane on the night of the assault. As to the identity of voices, she identified Jane's voice, her own voice, and later when the officers arrived to rescue Jane, she identified Officer Jones' voice. In reviewing the tape, we are unable to hear or detect the "unidentified voice" of which appellant is complaining.

This is not a case where the police are using a tape undercover in order to entrap someone. The mere fact that Ms. Smith did not operate the two master recorders with huge disks, and did not make the actual recording, is not noteworthy under the circumstances of this case, especially in light of the fact that there are four automatic recording disks to back up any malfunction at the police department. We hold that the *Edwards* test requirements were reasonably complied with under the circumstances of this case, and the trial court did not err in overruling appellant's objections to the State's predicate for the tape's ad-mission. Appellant's second and third points of error are overruled.

■ Under appellant's fourth point of error, he complains that the trial court erred in refusing to permit him to attend a hearing conducted to determine whether he had made threats to disrupt the trial proceedings. Before the start of testimony on the morning of the third day of trial, the trial court informed the attorneys, outside the jury's presence, that it had received reports that appellant had caused some trouble on his way to and from his cell during the previous days in trial. Since there had been recent security problems in the courtrooms, and since the above reports indicated that appellant was planning to disrupt proceedings in this trial, the trial court held a hearing to determine whether action needed to be taken. Appellant's trial attorney lodged a due process objection because appellant was not allowed to be present for this hearing.[1] In overruling the objection, the trial court reasoned that the bailiff assigned to its courtroom would be on the stand testifying and not able to be next to appellant during the hearing. The record does indicate that four or five other bailiffs were present in the courtroom at this time.

The trial court considered testimony from the bailiff who testified concerning several threats appellant made, e.g., that appellant would "tear up that courtroom." Additional testimony was heard from a criminal investigator for the district attorney's office, the substance of which was procured from several jailers in contact with appellant in his cell. His testimony reflects that appellant had been a disciplinary problem ever since he had been incarcerated in the Tarrant County Jail. Appellant's trial attorneys conducted cross-examinations of both the witnesses. As a result of this hearing, appellant was ordered shackled for the rest of the trial, with precautions to prevent the jury's observation of the shackles by way of large exhib-

---

1. Appellant's claim is based on Tex.Code Crim. Proc.Ann. art. 33.03 (Vernon 1989), which in pertinent part provides that a defendant has a right to be personally present during all felony trials unless he voluntarily absents himself, which is not the case here.

its encircling the table where appellant sat during trial.

We find that the trial court erred in not allowing appellant to be personally present during this hearing, especially in light of the fact that testimony was heard that directly affected him. We agree with appellant's contentions that he possibly could have assisted his counsel in their cross-examination, or determined whether he should take the stand at the hearing to rebut the State's testimony.

However, a rule has been cited with approval in a number of cases bearing on this issue:

> It is not everything that takes place in the absence of a defendant upon trial for which a reversal should be ordered. There must be an actual showing of injury or a showing of facts from which injury might reasonably be inferred.

*Mares v. State,* 571 S.W.2d 303, 305 (Tex. Crim.App. [Panel Op.] 1978); *see also, Mead v. State,* 759 S.W.2d 437, 442 (Tex. App.—Fort Worth 1988), *reversed on other grounds,* 819 S.W.2d 869 (Tex.Crim.App. 1991). Also, Tex.R.App.P. 81(b)(2) would bear on this issue, as we must determine beyond a reasonable doubt whether this error made a contribution to the conviction or punishment.

▇ We hold that the error in excluding appellant from attending the hearing leading to his shackling for the duration of the trial did not contribute to his conviction or his punishment beyond a reasonable doubt. From our view of the circumstances of this case, the error in this case was the exclusion from the hearing. This hearing outside the jury's presence may or may not have turned out differently if appellant had been allowed to be present. The record reflects that appellant's trial attorneys conducted cross-examinations on the two witnesses, on whose testimony the trial court based its decision to shackle. We also note that at no time does appellant specifically request rebuttal through his attorneys in an attempt to contradict the witnesses' report of appellant's actions in his exodus to his cell from the previous days trial.

The shackles were placed around appellant's ankles, but not around his wrists or arms. It does not appear from the record that the result of the hearing, the shackling, was ever considered or seen by the jury. The trial judge took sufficient precautions to conceal the shackles, and ordered that appellant be brought into the courtroom before the jury was seated to prevent any inference of shackling. In an abundance of caution, the trial judge stated, "[t]he exhibits that are covering the front of the table are innocuous appearing, they appear as something that have been used during the course of this trial and were just placed there. They don't seem to show, in the Court's opinion, to indicate we're trying to hide anything under that table." From a thorough review of original exhibits, we agree with the trial court's remarks. We reject appellant's theory that the jury theoretically could have "wondered" why exhibits were stationed around appellant's table. We also reject appellant's contention that harm was shown because the record is silent as to the composition of the shackles used and noise emanating from the shackles might have been heard by the jury. The record does not bear out any such contentions. Appellant's fourth point of error is overruled.

The judgment of the trial court is affirmed.