Sigma F. RICHARDSON, Appellant,

v.

The STATE of Texas, State.

No. 2–93–439–CR.

Court of Appeals of Texas,
Fort Worth.

Aug. 31, 1995.

Ward Casey, Fort Worth, for appellant.

Betty Marshall, Asst. District Attorney, Ft. Worth, for appellee.

Before DAY, DAUPHINOT and RICHARDS, JJ.

## OPINION

RICHARDS, Justice.

A jury found appellant guilty of the offense of voluntary manslaughter and sentenced her to twenty years' confinement. Appellant presents two points of error on appeal.

In point of error one, appellant alleges the trial court's [1] written charge on self-defense failed to instruct the jurors to view from the defendant's standpoint alone the facts and circumstances of the offense and appellant's previous relationship with the deceased. In her second point of error, appellant urges the

---

1. The trial judge presiding was a visiting judge.

reformation of the judgment and sentence so as to delete the deadly weapon finding reflected therein.

We affirm in part and reform in part.

Although the sufficiency of the evidence is not challenged on appeal, a review of the factual circumstances is necessary for a complete understanding of appellant's complaint concerning the jury instruction on self-defense.

The deceased, Ricky Richardson, was appellant's husband. At the time of the killing, they were living with their infant son, Ricky, Jr., in a Fort Worth apartment.

Bobbie Gulley, a licensed vocational nurse, lived on the floor above their apartment. On May 28, 1988, at around 11:00 a.m., Gulley heard someone banging and shouting at her door. She opened the door to find appellant in a state of panic. Appellant told Gulley her husband had been shot and asked for Gulley's assistance. Gulley quickly changed her clothes and ran to the Richardsons' apartment. Once there, Gulley picked up Ricky Jr. and placed him on a couch.

She found the victim lying face-up and naked on the bathroom floor. Later she recalled she also noticed a gun in the bathroom. The victim had a small wound to his left chest and scratches on his neck. Gulley believed Ricky was dying and, when she spoke to him, he began to cry. Although she commenced CPR, her actions were unsuccessful because air was escaping from his lungs.

Ronald Richardson, the brother of the deceased, paramedics, police, and security officer Ricky Dixon arrived immediately thereafter. At that point Gulley left and took Ricky, Jr., to her apartment. Later, she phoned the hospital and was told that Ricky had died.

When Ronald arrived at his brother's apartment, he saw Ricky struggling to breathe and tried to reassure him. He also noticed a gun on the bathroom floor. When he called his parents to inform them about Ricky's condition, appellant took the phone from him and explained that they had been playing with the gun and that the shooting was accidental.

Fort Worth Police Officer Larry Steffler interviewed appellant. Appellant made a statement implicating herself as the shooter; however, she made no claim of self-defense at that time.

A deputy medical examiner for Tarrant County conducted an autopsy. He found a contact wound to Ricky's back and an exit wound to his chest. The exit wound was consistent with the deceased's chest being against a hard surface. The exit wound was inconsistent with appellant's assertion that she held him in a bear hug while she shot him. The deputy medical examiner also found scratches around his face. Ricky died from blood loss as a result of the gunshot wound.

Mary Louise Richardson, Ricky's mother, recounted an occasion when Ricky had scratches on his arms. Appellant told her that she had scratched him during a fight. Appellant also allegedly told her she was willing to "fight any man."

James Richardson, Ricky's other brother, related that he had seen appellant's temper on many occasions. During one argument between appellant and Ricky, he had seen appellant continue to provoke Ricky, despite Ricky's attempts to stop the argument. On one occasion, he was present when appellant grabbed a gun, cocked it, pointed it at Ricky, and threatened to kill him.

Appellant presented a number of witnesses and testified herself in support of her claim of self-defense. Contradicting her statements immediately following the shooting, she conceded the shooting was intentional. She alleged, however, she was the victim of spousal abuse and only shot Ricky in order to save her own life. According to appellant, Ricky had physically and mentally abused her during their relationship. She related that on one occasion, after she inadvertently overcooked some noodles when preparing a meal, Ricky grabbed her by the hair, dumped the still hot pot of noodles on the floor, and forced her head down while he commanded her to eat the noodles. On another occasion, when she felt the onset of an epileptic seizure following a physical assault by Ricky, he poured her epilepsy medication down the disposal. Other instances of abuse were de-

tailed: Ricky once held a pistol to her head and forced her to beg for her life; he hit her with a toy baseball bat; Ricky laughed after appellant defecated on herself after he put an unloaded gun to her head and pulled the trigger.

According to appellant, she killed Ricky to prevent him from killing her. Appellant related the shooting occurred immediately following a violent fight during which Ricky choked her and prevented her from breathing. In response she scratched him on the face. Appellant testified that she shot Ricky after he stated he was going to kill her in front of her son. In support of her defense, appellant presented expert testimony indicating she suffered from the battered spouse syndrome, and that from her standpoint, she was in reasonable fear for her life at the time she shot Ricky.

The jury, acting as the trier of fact, rejected appellant's claim of self-defense, but acquitted her of murder and found her guilty of only the lesser included offense of voluntary manslaughter.

■ In her first point of error, appellant argues the trial judge erroneously denied her requested instruction under section 19.06 of the Penal Code. At the time of appellant's trial, section 19.06[2] provided:

Sec. 19.06 Evidence.

(a) In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

(b) In a prosecution for murder or manslaughter, if a defendant raises as a defense a justification provided by Section 9.31, 9.32, or 9.33 of this code, the defendant, in order to establish the defendant's

reasonable belief that use of force or deadly force was immediately necessary, shall be permitted to offer:

(1) relevant evidence that the defendant had been the victim of acts of family violence committed by the deceased, as family violence is defined by Section 71.01, Family Code; and

(2) relevant expert testimony regarding the condition of the mind of the defendant at the time of the offense, including those relevant facts and circumstances relating to family violence that are the basis of the expert's opinion.

Appellant alleges section 19.06(b), together with section 1.07(a)(31), Texas Penal Code, made the status of a "battered spouse" a special circumstance which should be considered by the jurors in assessing the reasonableness of her belief that she faced imminent danger of deadly force from her spouse. The State, in response, advances three reasons why the trial court acted properly in denying the requested instruction: (1) appellant was not entitled to the instruction because evidence of self-defense was not raised in the trial court; (2) the trial court's charge properly instructed the jury on the law of self-defense; and (3) an instruction under Texas Penal Code, section 19.06(a), was not required[3].

The jury instruction actually given by the trial court directed the jurors to view the testimony concerning the issue of self-defense from the standpoint of the appellant at the time of the shooting. Apparently not satisfied with that particular instruction, defense counsel requested an instruction worded more closely to the evidentiary rule set forth in section 19.06 of the Penal Code.

The jury instruction requested by defense counsel would have advised the jurors:

In determining the existence of real or apparent danger, you should consider all of the facts and circumstances in evidence before you, all relevant facts and circum-

---

**2.** Effective September 1, 1994, section 19.06 of the Penal Code was transferred to article 38.36 of the Texas Code of Criminal Procedure. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, §§ 1, 7.03, 1993 Tex.Gen.Laws 3586, 3764 (current version at Tex.Code Crim.Proc.Ann. art. 38.36 (Vernon Supp.1995)).

**3.** This third argument is presented in a post-submission letter brief accepted by the Court.

stances surrounding the killing, if any, the previous relationship existing between the accused and deceased, together with all relevant facts and circumstances, you should place yourselves in the defendant's position at that time and view them from his standpoint alone.

In her brief, appellant acknowledges her requested instruction was an instruction "on Section 19.06, Tx.Pen.Code, as applied to the self defense issues." Therefore, the first issue we must decide is whether a specific instruction under section 19.06, such as that tendered by defense counsel in the instant case, was required, or whether the instruction actually given was sufficient.

We begin by noting that section 19.06 was, in effect, an evidentiary rule containing no language mandating jury instructions of the nature requested by appellant in the instant case. In addressing a similar issue in *Huizar v. State*, 720 S.W.2d 651, 654 (Tex.App.— San Antonio 1986, pet. ref'd), it was held:

Section 19.06 is essentially a rule of evidence which dictates the scope of evidence that may be considered in prosecutions for murder or voluntary manslaughter. *See Jones v. State*, 689 S.W.2d 510 (Tex.App.— El Paso 1985) [*vacated and remanded on other grounds*, 720 S.W.2d 535 (Tex.Crim. App.1986) ]. While giving a charge on Sec. 19.06 is permissible, *Valentine v. State*, 587 S.W.2d 399 (Tex.Crim.App.1979), it has not been held to be mandatory or reversible error to refuse to do so. *Jones v. State*, 689 S.W.2d at 512.

■ As in *Huizar*, we hold that a charge under section 19.06 was not required, and that the charge actually given by the trial court was sufficient in requiring the jurors to consider the facts and circumstances surrounding the killing and the previous relationship between the accused and the deceased to show the condition of appellant's mind at the time of the killing. The instruction actually given by the trial court was the following:

You may consider all relevant facts and circumstances surrounding the killing, if any, and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense, if any.

A person is justified in using force to protect herself against another when and to the degree she reasonably believes the force is immediately necessary to protect herself against the other's use or attempted use of unlawful force.

A person is justified in using deadly force against another:

(1) if she would be justified in using force against the other in the first place, as above set out;

(2) if a reasonable person in her situation would not have retreated; and

(3) *when and to the degree she reasonably believes the deadly force is immediately necessary to protect herself against the other's use or attempted use of unlawful deadly force.*

By the term "reasonable belief" as herein used is meant a belief that would be held by an ordinary and prudent person in the same circumstances as the Defendant.

By the term "deadly force" is meant force that is intended or known by the person using it to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

*When a person is attacked with unlawful deadly force, or she reasonably believes she is under attack or attempted attack with unlawful deadly force, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, then the law excuses or justifies such person in resorting to deadly force by any means at her command to the degree that she reasonably believes immediately necessary, viewed from her standpoint at the time, to protect herself from such attack or attempted attack. And it is not necessary that there be an actual attack or attempted attack, as a person has a right to defend her life and person from apparent danger as fully and to the same extent as she would had the danger been real, provided that she acted upon a reasonable apprehension of danger, as it appeared to her (from his/her)*

*standpoint at the time, and that she reasonably believed such deadly force was immediately necessary to protect herself against the other person's use or attempted use of unlawful deadly force.*

Now, if you find from the evidence beyond a reasonable doubt that the Defendant, Sigma F [sic] Richardson, in the County of Tarrant and State of Texas, on or about the 28th day of May, 1988, did intentionally or knowingly cause the death of Ricky Richardson by shooting him with a deadly weapon, to-wit: a firearm, or did, with the intent to cause serious bodily injury to Ricky Richardson, commit an act clearly dangerous to human life, namely shoot him with a deadly weapon, to wit: a firearm; which caused the death of Ricky Richardson, but you further find from the evidence, or you have a reasonable doubt thereof, *that viewed from the standpoint of the Defendant at the time, from the words or conduct, or both, of Ricky Richardson, it reasonably appeared to the Defendant that her life or person was in danger and there was created in the Defendant's mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Ricky Richardson and that the Defendant reasonably believed that under the circumstances then existing* a reasonable person would not have retreated before using deadly force in her own defense, and that the Defendant, acting under such apprehension and reasonably believing that the use of deadly force on her part was immediately necessary to protect herself against Ricky Richardson's attempted use of unlawful deadly force, and that she, therefore, shot said Ricky Richardson, then you will find the Defendant not guilty.

If you find from the evidence beyond a reasonable doubt that at the time and place in question the Defendant did not reasonably believe that she was in danger of death or serious bodily injury, or that a reasonable person in the Defendant's situation, at such time and place, would have retreated before using deadly force against Ricky Richardson, or that the Defendant, under the circumstances, did not reasonably believe that the degree of force actu-

ally used by her was immediately necessary to protect herself against Ricky Richardson's use or attempted use of unlawful deadly force, if any, as viewed from the Defendant's standpoint, at the time, then you must find against the Defendant on the issue of self defense.

(emphasis added)

We find the instruction actually given to have properly advised the jurors on the law of self-defense. Appellant's argument that the charge incorrectly requires the jurors to consider the reasonableness of self-defense from the appellant's standpoint *at the time of the offense* rather than also consider the *previous relationship,* in our view, overlooks the language in the charge specifically advising the jurors they could consider all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

Point of error one is overruled.

■ In her second point of error, appellant complains the trial court's written judgment was incorrect in reflecting she used a deadly weapon in the commission of the offense. Appellant notes the jurors did not find her guilty as charged in the indictment (which alleged the use of a firearm) nor respond affirmatively to a deadly weapon special issue. On that basis, appellant argues, the deadly weapon finding reflected in the judgment was inappropriate.

We agree.

The trial court's charge to the jury included an instruction on murder:

Now, if you find from the evidence beyond a reasonable doubt that the Defendant, Sigma F [sic] Richardson, in the County of Tarrant and State of Texas, on or about the 28th day of May, 1988, did then and there intentionally or knowingly cause the death of an individual, Ricky Richardson, by shooting him with a deadly weapon, to-wit: a firearm; or, if you find from the evidence beyond a reasonable

doubt that the Defendant, Sigma F [sic] Richardson, in the County of Tarrant and State of Texas, on or about the 28th day of May, 1988, did then and there intentionally, with the intent to cause serious bodily injury to Ricky Richardson, commit an act clearly dangerous to human life, namely, shoot him with a deadly weapon, to-wit: a firearm, which caused the death of Ricky Richardson, then you will find the Defendant guilty of the offense of murder, as charged in the indictment.

The charge also included, at Appellant's request, a voluntary manslaughter instruction.

Now, if you find from the evidence beyond a reasonable doubt that the Defendant, Sigma F [sic] Richardson, in the County of Tarrant and State of Texas, on or about the 28th day of May, 1988, did then and there intentionally or knowingly cause the death of an individual, Ricky Richardson, by shooting him with a deadly weapon, to-wit: a firearm; or if you find from the evidence beyond a reasonable doubt that the Defendant, Sigma F [sic] Richardson, in the County of Tarrant and State of Texas, on or about the 28th of May, 1988, did then and there intentionally, with intent to cause serious bodily injury to Ricky Richardson, commit an act clearly dangerous to human life, namely, shoot him with a deadly weapon, to-wit: a firearm, which caused the death of Ricky Richardson; and that the Defendant, in so acting, if she did, was acting under the immediate influence of sudden passion arising from an adequate cause, as those terms are defined herein, then you will find the Defendant guilty of the offense of voluntary manslaughter.

The jury convicted appellant of the lesser-included offense of voluntary manslaughter. The jury's verdict stated:

> We the jury, find the Defendant, Sigma F [sic] Richardson, guilty of the offense of voluntary manslaughter.
>> [*signed by the Foreperson*]
>> Foreman

Since the time of the Court of Criminal Appeals' opinion in *Polk v. State*, 693 S.W.2d 391, 393 (Tex.Crim.App.1985), it has been held that a trial court is authorized to enter a deadly weapon affirmative finding in three situations: where the jury has (1) found guilt as alleged in the indictment and the deadly weapon has been specifically pleaded as such using "deadly weapon" nomenclature in the indictment; (2) found guilt as alleged in the indictment but, though not specifically pleaded as a deadly weapon, the weapon pleaded is per se a deadly weapon; or (3) affirmatively answered by a special issue on deadly weapon use.

A previous panel of this court, in attempting to carve out a fourth situation under circumstances identical to those present in the instant case, was rebuked by the Texas Court of Criminal Appeals in the recent case of *Davis v. State*, 897 S.W.2d 791, 794 (Tex. Crim.App.1995). The court there affirmed there are only three situations in which a deadly weapon affirmative finding is authorized in a case tried to a jury. None of those situations are present in our case. The Court of Criminal Appeals in *Davis* ordered the judgment of the trial court reformed so as to delete the deadly weapon finding. That remedy is also appropriate here.

The judgment entry as to the finding on use of a deadly weapon is hereby ordered deleted. The judgment of the trial court, as reformed, is affirmed.