

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-12-00622-CR

RANDY KEITH SEIBEL                                                APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Randy Keith Seibel appeals from his conviction for capital murder and life sentence. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## I. BACKGROUND[2]

Seibel was charged with capital murder after he participated with four other men in the robbery of a convenience store, which they had unsuccessfully planned twice before. During the robbery, one of the participants—Kwame Rockwell—shot Jerry Burnett (who was delivering bread at the time of the robbery), injuring him. After the store clerk—Daniel Rojas—showed the men where the store's money was kept, Rockwell shot Rojas in the head, killing him. After the men left the store, Burnett called 911. Burnett later died from his injury.

Chance Smith, who had been the getaway driver for the robbery, began to feel guilty and called the police the next day. Smith told the police that Seibel had been involved in the robbery but did not implicate himself. Appellant, Rockwell, Smith, and Tyrone Thomas (the fourth participant) later were arrested based on Smith's information.

Shortly after Appellant was arrested and given the appropriate warnings, he invoked his right to counsel and asked to speak with Rachel Sheeran, whom he identified as his stepmother and his attorney. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (West Supp. 2013). The police detectives questioning Appellant—Tom Boetcher and Brent Johnson—immediately stopped the interview.

---

[2]Although Appellant does not challenge the sufficiency of the evidence, some factual discussion is necessary to put Appellant's arguments in context. Thus, our factual recitation is not exhaustive.

Two days later, Sheeran spoke to Appellant at the jail. Before Sheeran spoke with Appellant, Boetcher told Sheeran that if Appellant cooperated, Boetcher "would make that fact known to the prosecuting attorney." Sheeran told Appellant that she had consulted with another attorney who advised that Appellant should remain silent until a plea-bargain deal could be achieved. Indeed, Sheeran brought a form for Appellant to sign indicating he was invoking his right to remain silent. But Sheeran counseled Appellant that her "gut" told her that he should make a statement because Smith had been arrested and would talk to the police and because Boetcher would mention Appellant's cooperation to the prosecuting attorney. Sheeran believed her advice helped Appellant avoid the death penalty. Sheeran then asked Boetcher to join them because Appellant wanted to make a statement. Boetcher again gave Appellant the article 38.22 warnings. Appellant waived the rights explained in the warnings and gave a statement implicating himself as a participant in the robbery. Sheeran "represent[ed] herself specifically as [Appellant's] attorney" to Boetcher.

A few days later, Sheeran contacted the police department because Appellant "wanted to talk . . . again" but stated that she did not need to be present "unless [Appellant] wanted her." Johnson spoke with Appellant after again giving him the article 38.22 warnings. Appellant told Johnson he did not need Sheeran and gave a second statement implicating Tyrone Thomas's cousin, Tim Thomas, as the fifth participant in the robbery.

3

Appellant was indicted for capital murder to which he pleaded not guilty. *See* Tex. Penal Code Ann. § 19.03(a)(2) (West Supp. 2013). At some point, the State elected not to seek the death penalty.[3] Before Appellant's trial, he filed a motion to suppress his inculpatory statements. The trial court denied the motion. After a trial, the jury found Appellant guilty of capital murder, and the trial court assessed his punishment at life confinement without parole. *See* Tex. Code Crim. Proc. Ann. art. 37.071, § 1 (West Supp. 2013). Appellant appeals and asserts that he received ineffective assistance of counsel before he gave his statements, the trial court erred by denying his motion to suppress, the trial court made an improper comment during voir dire, the trial court erred by admitting extraneous-offense evidence, the trial court erred by admitting Burnett's 911 call, the jury charge was erroneous, the trial court erroneously overruled his objection to the State's jury argument, and any errors found to be harmless constitute cumulative error.

---

[3]The record does not clearly show exactly when the State waived the death penalty. As recently as four months before trial, Appellant filed a motion to preclude imposition of the death penalty and a motion to allow the jury to hear the impact of its vote division on the imposition of the death penalty. The judgment, however, reflects that because the State waived the death penalty and because the jury found Appellant guilty of capital murder, the trial court assessed Appellant's punishment at life without parole. In any event, Appellant correctly asserts that the State's waiver occurred at least two years after he gave the inculpatory statements.

4

## II. INEFFECTIVE ASSISTANCE OF COUNSEL
## AND IMPACT ON VOLUNTARINESS OF STATEMENTS

In his first two points, Appellant asserts that Sheeran was ineffective in advising him to talk to the police, which rendered those statements involuntary and, thus, inadmissible. Both the State and Appellant agree that the test to determine the effectiveness of counsel requires Appellant to show by a preponderance of the evidence that (1) counsel's acts or omissions were outside the wide range of professional assistance and (2) there is a reasonable probability that, but for these unprofessional errors, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–89, 104 S. Ct. 2052, 2064–65 (1984); *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012).

Appellant cannot meet either prong of this test. Sheeran, while not a seasoned criminal practitioner,[4] did not act unreasonably under all the circumstances and prevailing professional norms. *See generally Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (holding review of counsel's

---

[4]We decline Appellant's invitation to presume either deficient performance or prejudice arising from such performance solely based on Sheeran's meager criminal experience. In our review of Sheeran's performance, we must focus on her actions under the totality of the circumstances and prevailing professional norms, not her resume. *See Ex parte Dwyer*, No. 08-01-00059-CR, 2002 WL 28018, at *7 (Tex. App.—El Paso Jan. 10, 2002, pet. ref'd) (not designated for publication) ("[Appellant's] claim that trial counsel was inexperienced is based on evidence regarding his reputation and not his actual conduct at trial."). *See generally Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

5

representation is highly deferential and includes strong presumption that counsel's conduct fell within a wide range of reasonable representation). Sheeran spoke to a more experienced criminal attorney before speaking with Appellant. She also investigated what evidence the police had to implicate Appellant, talked to other police officers to determine if Boetcher was a "good detective," and knew that Smith had been arrested. Before meeting with Appellant, she drafted a statement for him to sign if he wanted to invoke his right to remain silent, as the other attorney had recommended. Although the other attorney had advised that Appellant should not speak to the police, Boetcher told Sheeran that Appellant's cooperation would be communicated to the prosecuting attorney. Sheeran told Appellant that the other attorney would advise Appellant not to talk to the police, Boetcher would tell the prosecuting attorney about Appellant's cooperation, Boetcher could not guarantee any leniency, and she believed Appellant should cooperate.

In sum, Sheeran investigated before speaking with Appellant and correctly explained his options to him, including her strategic opinion that Appellant should give a statement to gain more favorable treatment. We cannot conclude that Sheeran's actions and advice were so outrageous that she was acting as constitutionally ineffective counsel. *See Rivera v. State*, 317 S.W.3d 480, 482–83 (Tex. App.—Amarillo 2010, no pet.) (concluding counsel's performance not deficient when appellant's decision to plead guilty was made after review of his options); *Powers v. State*, 727 S.W.2d 313, 316 (Tex. App.—Houston [1st Dist.]

6

1987, pet. ref'd) (holding no ineffective assistance of counsel where record contains no evidence that appellant was misled by counsel); *cf. Kennedy v. State*, 402 S.W.3d 796, 800 (Tex. App.—Fort Worth 2013, pet. struck) ("[W]e refuse to second guess counsel's trial strategy simply because it failed to result in an acquittal.").

Further, Appellant cannot show that the result of his trial would have been different absent Sheeran's conduct. Appellant raises three different hypothetical outcomes that could have occurred if Sheeran had not advised him to waive his right to remain silent. But these hypotheticals do not show that Appellant was denied a fair trial and, at most, merely show that Sheeran's advice could have had some conceivable effect on the outcome, which is insufficient to demonstrate the degree of prejudice that *Strickland* requires. *See Burruss v. State*, 20 S.W.3d 179, 186–88 (Tex. App.—Texarkana 2000, pet. ref'd); *see also Gulley v. State*, No. 2-06-395-CR, 2008 WL 755203, at *8 (Tex. App.—Fort Worth Mar. 20, 2008, pet. ref'd) (mem. op., not designated for publication). Indeed, Sheeran based her advice on her belief that Appellant could avoid the death penalty if he gave a statement, which occurred (albeit two years later). *See Ripkowski v. State*, 61 S.W.3d 378, 390 (Tex. Crim. App. 2001) (holding counsel's advice not constitutionally ineffective when "Appellant received exactly what counsel told him he would get").

Appellant also attacks counsel's performance as rendering his decision to waive his rights to remain silent and to counsel involuntary. As we have held

7

above, Appellant has failed to show that Sheeran was constitutionally ineffective. Further, nothing shows that Appellant's statements were involuntary based on Sheeran's correct explanation of his then-existing options or on Boetcher's allowable promise to communicate Appellant's cooperation. *Cf. Herrera v. State*, 194 S.W.3d 656, 660 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (holding police promise to "talk to the D.A., get you an offer, if you can help us" was not improper promise rendering confession inadmissible). We overrule points one and two.

### III. VOIR DIRE

In his third point, Appellant asserts that the trial court improperly commented on his Fifth Amendment right not to incriminate himself. Before questioning of the veniremembers began, the trial court discussed Appellant's rights under the Fifth Amendment:

> You will also get an instruction about the defendant's failure to testify. The defendant in any criminal case is not required to prove himself innocent. If the defendant does not choose to testify, you may not consider this fact as evidence of guilt nor may you, in your deliberations, comment or in any way allude to that fact.

> I think growing up as a small kid and maybe as an older gentleman, I would have liked to have been able to invoke that rule at my house, but I was not able to.

Appellant did not object to these statements.

Appellant recognizes that his failure to object limits our review to a determination of whether the statements were fundamental error affecting his substantial rights. *See* Tex. R. App. P. 33.1(a)(1); Tex. R. Evid. 103(d). To

8

constitute fundamental error, Appellant must show that the trial court's statements "rose to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). The trial court's comments here, however, did not directly comment on the import of Appellant's Fifth Amendment rights or shift the State's burden of proof in any way. We conclude that the trial court's statements did not constitute fundamental error such that Appellant's failure to object is excused. *See, e.g.*, *Latson v. State*, No. 14-12-00559-CR, 2013 WL 4487544, at *1–2 (Tex. App.—Houston [14th Dist.] Aug. 22, 2013, no pet.) (holding trial court's voir-dire statement that reasonable doubt was "simply what is in each juror's 'heart'" not fundamental error because it did not shift the State's burden of proof or allow the jury to disregard the charge); *Morris v. State*, No. 01-12-00203-CR, 2013 WL 4399216, at *4–6 (Tex. App.—Houston [1st Dist.] Aug. 15, 2013, no pet.) (mem. op., not designated for publication) (holding trial court's definitions during voir dire of "imminent" and "threaten" with explanatory hypotheticals were not fundamental error under *Jasper*); *Smith v. State*, Nos. 10-08-00360-CR, 10-08-00361-CR, 2009 WL 4263701, at *2–5 (Tex. App.—Waco Nov. 25, 2009, pet. dism'd, untimely filed) (mem. op., not designated for publication) (holding trial court's voir-dire statement referring to instances when defense counsel "didn't even call the defendant to the witness stand" not fundamental error because, in context, it did not comment on Smith's right to remain silent or vitiate the presumption of innocence). We overrule point three.

9

## IV. ADMISSION OF EVIDENCE

In points four, five, six, and seven, Appellant argues that the trial court abused its discretion in admitting extraneous-offense evidence and a recording of Burnett's 911 call. We review a trial court's decision to admit evidence under an abuse-of-discretion standard. *See Rachal v. State*, 917 S.W.2d 799, 808 (Tex. Crim. App.), *cert. denied*, 519 U.S. 1043 (1996); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

### A. EXTRANEOUS-OFFENSE EVIDENCE

At trial, the State introduced evidence that, in the week before the successful robbery, Appellant, Rockwell, and Smith twice planned to rob the same store. The State also introduced evidence that a month before the successful robbery, Appellant, Rockwell, and Smith planned either to stage a car accident with the store owner while he had the money with him or to set the store owner's house on fire to get the money he presumably had hidden there. These plans fell apart for various reasons. Appellant argues that the trial court abused its discretion because these instances were insufficient to show a plan to rob the store and because they did not show Appellant's willingness to participate.

Although evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith," such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex. R. Evid. 404(b). Further, such evidence is admissible under

10

rule 404(b) to rebut an affirmative defense. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

At trial, the State asserted that it offered the evidence to show a "plan" and "preparation for the actual offense." As the State points out, Appellant asserted the affirmative defense of duress—that Rockwell threatened Appellant with a gun when Appellant balked at participating in the robbery. *See* Tex. Penal Code Ann. § 8.05 (West 2011). The two prior plans to rob the store and the plans to burn the store owner's home and stage a car accident, in which Appellant was involved, directly rebutted Appellant's affirmative defense; thus, they were admissible. *See Thrush v. State*, 515 S.W.2d 122, 125 (Tex. Crim. App. 1974). Additionally, this evidence was admissible "to show steps taken by the defendant in preparation for the charged offense." *Daggett v. State*, 187 S.W.3d 444, 451 (Tex. Crim. App. 2005). The trial court did not abuse its discretion, and we overrule points four, five, and six.

### B. 911 CALL

Appellant next asserts the trial court abused its discretion by admitting the recording of Burnett's 911 call after he was shot. At trial, Appellant objected to its admission on the ground that it was unduly prejudicial under rule 403. Tex. R. Evid. 403. On appeal, Appellant asserts that the evidence was not relevant to any fact at issue in the guilt-innocence phase of the trial and that the evidence was "highly prejudicial." *See* Tex. R. Evid. 401, 402, 403. To the extent Appellant's argument on appeal varies from the argument raised at trial,

Appellant has forfeited such an argument. *See Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *Brooks v. State*, 833 S.W.2d 302, 304 (Tex. App.—Fort Worth 1992, pet. ref'd). Thus, we address Appellant's argument under rule 403.

In such a review, we presume that the evidence's probative value outweighs its prejudicial effect. *See Montgomery*, 810 S.W.2d at 388–89. Tapes of 911 calls are generally admissible because they "provide a framework within which the particulars of the State's evidence could be developed" even though such calls may not "establish any material fact not otherwise proven in the balance of the State's case." *Webb v. State*, 760 S.W.2d 263, 276 (Tex. Crim. App. 1988), *cert. denied*, 491 U.S. 910 (1989); *see Munoz v. State*, 932 S.W.2d 242, 244 (Tex. App.—Texarkana 1996, no pet.). This is true for the instant case.

On the recording, Burnett is obviously in pain and can be heard repeatedly asking for help, yelling that he was "bleeding to death," directing officers to the store's location, and stating that he had been shot "thirty minutes ago" by someone but that he did not know where the shooter was at the time. This evidence explains the circumstances surrounding the crime and, thus, was not unduly prejudicial. *See Munoz*, 932 S.W.2d at 244; *see also* Patterson *v. State*, No. 02-12-00212-CR, 2013 WL 2631183, at *3 (Tex. App.—Fort Worth June 13, 2013, no pet.) (mem. op., not designated for publication). We conclude that the probative value of the call, even though emotionally charged, was not outweighed by its prejudicial effect. *See, e.g., Estrada v. State*, 313 S.W.3d 274,

300 (Tex. Crim. App. 2010) (holding in capital-murder case that 911 recording of the victim's family upon discovering her body was admissible at the guilt-innocence phase and not unduly prejudicial), c*ert. denied*, 131 S. Ct. 905 (2011); *Woods v. State*, No. 14-12-00775-CR, 2013 WL 3958479, at *2 (Tex. App.—Houston [14th Dist.] July 30, 2013, no pet.) (mem. op., not designated for publication) (holding 911 call by assault victim's cousin not unduly prejudicial when cousin reported victim's physical condition after stabbing because it "assisted in completing a timeline of the entire incident by providing information regarding events between the stabbing and [victim's] hospitalization"); *Yi v. State*, No. 01-05-01147-CR, 2007 WL 2052064, at *4 (Tex. App.—Houston [1st Dist.] July 19, 2007, no pet.) (mem. op., not designated for publication) (holding 911 recording of murder victim's eleven-year-old son after finding his mother's "blood soaked body" not unduly prejudicial). Accordingly, the trial court did not abuse its discretion in admitting the recording, and we overrule point seven.[5]

## V. JURY CHARGE

In his eighth point, Appellant contends that the jury charge contained error in that recklessness was defined only once even though the term was applicable

---

[5]Even if admission of the 911 call were an abuse of discretion, we would conclude that Appellant's substantial rights were not affected by the error. *See* Tex. R. App. P. 44.2(b); *Motilla v. State*, 78 S.W.3d 352, 355–58 (Tex. Crim. App. 2002); *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). For instance, Appellant does not challenge the sufficiency of the evidence to support his guilt, which included his inculpatory statements to the police, and the State did not stress the 911 call in presenting its case to the jury.

13

to two issues submitted to the jury—the elements of aggravated robbery and the affirmative defense of duress. The trial court defined the term on the second page of the jury charge:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

On the fourth page of the charge, the trial court included an explanation of the elements of aggravated robbery, which included the *mens rea* of "recklessly" along with "intentionally" and "knowingly." On the same page of the charge, the trial court explained that the defense of duress is "unavailable if the actor intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion." The trial court informed the jury immediately after the aggravated-robbery and duress instructions that intentionally, knowingly, and recklessly had been defined on page two of the charge. Appellant had requested that the trial court limit the definition of recklessness to result-of-conduct and define it as "[a] person acts recklessly or is reckless with respect to a result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur." The trial court overruled Appellant's requested instruction.

14

Appellant's argument is that because recklessness as it relates to duress is nature-of-conduct focused and because the definition on page two included more than a nature-of-conduct instruction, the definition on page two was incorrect to the extent it applied to duress.[6] Appellant also asserts that the definition of reckless as it relates to aggravated robbery was erroneous because it was not limited to a result-of-conduct instruction. "[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.* If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.*

The culpable mental states in the penal code encompass three possible conduct elements that may be involved in an offense: nature of the conduct, result of the conduct, and circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). When an offense is specifically delineated as to the type of conduct, the trial court should limit the statutory definitions or the application paragraphs in the jury charge to the culpable mental state required.[7] *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim.

---

[6]We note that Appellant's argument varies from the argument proffered to the trial court. But as we explain, we are charged with reviewing all alleged jury-charge error.

[7]Because of this law, we disagree with the State's suggestion that a jury charge that "tracks the penal code" cannot be erroneous.

App. 1994); *Murray v. State*, 804 S.W.2d 279, 281 (Tex. App.—Fort Worth 1991,

pet. ref'd); 43 George E. Dix & John M. Schmolesky, *Texas Practice:   Criminal

Practice & Procedure* § 43:8 (3d ed. 2011).

## A.  AGGRAVATED ROBBERY

Appellant's argument regarding the aggravated-robbery charge is without

merit.   The charge specifically informed the jury that it was to consider

aggravated robbery only if it had previously concluded that Appellant was not

guilty of capital murder:   "Unless you so find [Appellant guilty of capital murder]

and believe beyond a reasonable doubt, [or] if you have a reasonable doubt

thereof, or if you are unable to agree, you will next consider whether he is guilty

of the lesser included offense of Aggravated Robbery."   Therefore, the jury did

not consider the charge as it related to aggravated robbery, which would render

any possible error harmless as unrelated to the verdict or Appellant's substantial

rights.   *See* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); Tex. R. App. P.

44.2(b).

Even were we to address the propriety of the trial court's charge on

aggravated robbery, we would conclude there was no error.  Aggravated robbery,

as Appellant was alleged to have committed, contains result-of-conduct, nature-

of-conduct, and circumstances-surrounding-conduct elements.   *See Garza v.

State*, 794 S.W.2d 497, 500–01 (Tex. App.—Corpus Christi 1990, pet. ref'd); *see

also McCarty v. State*, No. 10-13-00066-CR, 2013 WL 5526224, at *2–3 (Tex.

App.—Waco Oct. 3, 2013, no pet.) (mem. op., not designated for publication).

16

Thus, the definition of reckless, as it applied to the elements of aggravated robbery, correctly included more than a result-of-conduct instruction.

## B. DURESS

Duress, on the other hand, is an affirmative defense upon which Appellant bore the burden of proof and persuasion by a preponderance of the evidence. Tex. Penal Code Ann. §§ 2.04(d), 8.05(a) (West 2011); *Meraz v. State*, 785 S.W.2d 146, 151 (Tex. Crim. App. 1990). Its unavailability is not an element of the offense upon which the trial court was required to charge the jury and upon which the State bore any burden. *See* Tex. Penal Code Ann. § 1.07(a)(22)(B) (West Supp. 2013), § 8.05(d) (West 2011). *See generally* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007).

Here, the charge correctly set out the elements of the affirmative defense of duress under section 8.05(a) and (b), stated the proper burden of proof and persuasion under section 2.04, and explained that the affirmative defense was unavailable if "the actor intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion." Tex. Penal Code Ann. § 8.05(d). Because the mental state of reckless in section 8.05(d) is not a culpable mental state that must be properly defined under the penal code, the trial court was not required to separately and specifically define that term as it related to Appellant's affirmative defense. *Cf. Milner v. State*, 262 S.W.3d 807, 808–09 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (recognizing trial court not required to specially instruct jury on justification defense under

17

article 38.36(b) because general jury instruction to limit consideration to admitted evidence adequate); *Richardson v. State*, 906 S.W.2d 646, 648–49 (Tex. App.—Fort Worth 1995, pet. ref'd) (holding specific charge regarding scope of evidence under section 19.06 not required where general charge sufficient by requiring jurors to consider surrounding circumstances and previous relationship between defendant and victim to show defendant's state of mind). *See generally King v. State*, 189 S.W.3d 347, 364–65 (Tex. App.—Fort Worth 2006, no pet.) (upholding similar jury charge on duress on different grounds). Indeed, Appellant does not cite any authority supporting his argument that the mental states relating to the affirmative defense of duress were required to be separately defined and specifically delineated as to the type of conduct as if they were elements of the offense. The trial court did not err by failing to separately define reckless or by expansively defining reckless in the general portion of the charge as it related to Appellant's affirmative defense of duress.[8] We overrule point eight.

## VI. JURY ARGUMENT

In his ninth point, Appellant contends that the trial court erred by overruling his objection to the State's unsupported jury argument, which "attempted to tell the jury what [Appellant] was thinking when he gave his statement to police."

---

[8]Additionally, we conclude that the definition contained in the charge was substantially the same as the requested definition and adequately covered Appellant's request, which precludes a finding of harm. *See Valentine v. State*, 587 S.W.2d 399, 402 (Tex. Crim. App. 1979); *Samford v. State*, 302 S.W.3d 552, 557–58 (Tex. App.—Texarkana 2009, no pet.).

Appellant fails to cite the specific portion of the record containing the complained-of argument. We assume Appellant is attacking the following statements made by the State during closing jury arguments regarding Appellant's plan to torch the store after the robbery, which Smith had testified to:

> And why is [Appellant] guilty under this theory [the law of parties]? Because you know that this plan, it evolved over time. And one of the plans, it was actually [Appellant] who was going to spread that gasoline and start that store on fire.
>
> Now, he didn't tell that to the - - in the statement he gave to the police. He didn't tell that. But, ladies and gentlemen, there's a lot of things that [Appellant] didn't tell in that statement. And you get to evaluate all of that, ladies and gentlemen.
>
> And he knew that they had - - he had to give them some of the facts to make himself look - -
>
> [Defense counsel]: Objection, that is an improper argument, that's outside the record.
>
> THE COURT: I'll overrule the objection.
>
> [The State]: Now, ladies and gentlemen, [Appellant] also told you the second way that he can be guilty under the law of parties . . . .

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993). The State's argument was a reasonable deduction from the evidence and was, therefore, proper jury argument. It was reasonable from the admitted evidence for the State to deduce

19

that because Appellant failed to include information indicating that he was a willing participant, his assertions that he was under duress and that he could not be considered a party to the crime were not credible. *See, e.g.*, *Auguste v. State*, No. 08-99-00303-CR, 2002 WL 475226, at \*5 (Tex. App.—El Paso Mar. 29, 2002, no pet.) (not designated for publication). The trial court did not err by overruling Appellant's objection. We overrule point nine.

## VII. CUMULATIVE ERROR

In his final point, Appellant cogently asserts that all of the errors raised in his brief suffice to show cumulative harm warranting reversal. *See generally Linney v. State*, No. PD-0675-13, 2013 WL 6182424, at \*1–2 (Tex. Crim. App. Nov. 27, 2013) (Cochran, J., concurring in refusal of pet.) (explaining briefing requirements and review standard for issues of cumulative error). Because we have concluded that there was no error, there can be no cumulative error or harm. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000). We overrule point ten.

## VIII. CONCLUSION

Having overruled Appellant's points, we affirm the trial court's judgment.

*See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 23, 2014