

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00149-CR

RANDALL EUGENE BROOKS　　　　　　　　　　　　　　APPELLANT

V.

THE STATE OF TEXAS　　　　　　　　　　　　　　　　　STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
## TRIAL COURT NO. 0386824D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Randall Eugene Brooks appeals the trial court's order denying his Chapter 64 motion for DNA testing related to his 1991 conviction for aggravated sexual assault. In two points, Brooks argues that the trial court erred

---

[1]*See* Tex. R. App. P. 47.4.

by not holding an evidentiary hearing related to his Chapter 64 motion and by denying his request for DNA testing. We will affirm.

## II. BACKGROUND

This court previously affirmed Brooks's conviction in 1992. *Brooks v. State*, 833 S.W.2d 302, 303 (Tex. App.—Fort Worth 1992, pet. ref'd). In our 1992 opinion, we described how on September 24, 1989, Brooks subjected "Jane" to a two-hour brutal sexual assault during which he beat, raped, sodomized, and robbed her. *Id.* He then left her bound with torn sheets and her hands behind her back. From there, Jane successfully rolled toward the phone, knocked the receiver off the hook, and used her chin to get an operator, who, in turn, connected her with a 9-1-1 operator. *Id.* at 304.

After binding Jane with the torn sheets, Brooks stole Jane's car, pistol, black leather belt, and $94 in cash. *Id.* at 303. Brooks was later found in Oklahoma City driving Jane's car with her pistol found under the front seat. *Id.* Brooks is currently serving a life sentence in prison. *Id.*

In 2005, Brooks sent the Tarrant County Criminal District Attorney's Office an affidavit wherein he described himself as a "born again Christian" and explained that he could no longer live "the lie that [he had] lived for 16 years." Brooks went on to explain that he and Jane had a pre-existing relationship that began as workout partners but later evolved into sexual intimacy. Brooks averred that on the night Jane was allegedly raped, and after she had declined to advance him $2500 as startup money for a "business venture"; declined to assist

2

him in purchasing chemicals from Oklahoma City for the manufacturing of methamphetamine; and declined his embrace, he "spontaneously" went into a deranged rage and sexually assaulted her. Brooks described himself as "vile," "repulsive," and a "sick savage."

In this affidavit, Brooks also stated that after tying Jane to her bed, he took her a glass of water and her heart medication. He said from there, he took Jane's car and the glass of remaining water and finished off the water as he drove to Oklahoma. Brooks explained that this was the only glass he touched in Jane's house that night and that evidence of his fingerprints found on a different glass in Jane's house, introduced at trial, could not have been his and must have been manufactured by the police. Brooks admitted to taking Jane's pistol and car but alleged in his affidavit that he intended to return these items once he finished his methamphetamine-related business in Oklahoma.

On January 8, 2014, Brooks filed his Chapter 64 motion. In his motion, Brooks sought DNA testing of semen found during Jane's sexual-assault exam. According to Brooks, testing of this DNA would prove that he was not Jane's assailant. In his motion, Brooks stated that in 2007, the Innocence Project accepted him as a client and filed a previous motion for DNA testing but later withdrew representation and the motion because of the affidavit he sent to the district attorney in 2005. Brooks stated that at the time he had contacted the Innocence Project, "he was not [being] truthful" and that he was operating under

3

an orchestrated "pact" between himself and Jane, ostensibly to keep their "affair" from being discovered.

In its response to Brooks's motion, the State illuminated record evidence from Brooks's sexual-assault trial. Specifically, the State pointed out that evidence adduced at trial showed that Brooks broke into Jane's house, threatened to kill her, and forced her to remove her clothing. From there, Brooks raped and beat Jane. He then tied Jane's hands and feet, and he tied her to her bedframe using torn sheets. Shortly thereafter, Brooks took her gun, $94 in cash, "a silver Concho belt worth five thousand dollars," and her vehicle and drove to Oklahoma.

Later that day, Oklahoma law enforcement apprehended Brooks. He was found driving Jane's car, her gun was in his possession, and police discovered evidence that he had sold her "Concho belt" earlier that day. Other evidence the State pointed to included Brooks's attempts to discard the gun during Oklahoma police officers' pursuit of him and evidence of Brooks's fingerprints found on a glass in Jane's home from the night of the assault. The State then filed its proposed findings of facts and conclusions of law.

Without holding a hearing, the trial court denied Brooks's motion and adopted the State's findings of fact and conclusions of law. Later, having found Brooks indigent, the trial court appointed appellate counsel. This appeal followed.

## III. DISCUSSION

Under Texas Code of Criminal Procedure Chapter 64, a convicted person may submit to the convicting court a motion for forensic DNA testing of evidence containing biological material. Tex. Code Crim. Proc. Ann. art. 64.01(a-1). A trial court must order DNA testing only if the statutory requirements of article 64.03 are met, that is, only if (1) the evidence still exists and identity was or is an issue in the case and (2) the convicted person establishes by a preponderance of the evidence that the person would not have been convicted if exculpatory results had been obtained through DNA testing. *Id.* at 64.03; *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002). A preponderance of the evidence is measured by whether there is a reasonable probability of a different outcome had the DNA test results been available at the time of trial. *Whitfield v. State*, 430 S.W.3d 405, 422 (Tex. Crim. App. 2014). Furthermore, if identity was not or is not still an issue in the case, then the trial court cannot order DNA testing. *Reger v. State*, 222 S.W.3d 510, 514 (Tex. App.—Fort Worth 2007, pet. ref'd), *cert. denied*, 552 U.S. 1117 (2008). Identity must be in question without considering the possible results of DNA testing. *Bell*, 90 S.W.3d at 308.

Generally, in reviewing Chapter 64 rulings, this court gives almost total deference to the court's findings of historical fact and application-of-law-to-fact issues that turn on witness credibility and demeanor, but we consider de novo all other application-of-law-to-fact questions. *Routier v. State*, 273 S.W.3d 241, 246 (Tex. Crim. App. 2008). But when the trial court bases its determination only on

the trial record and affidavit of the appellant, as in this case, the trial court is in no better position than we are and we will review all issues de novo. *Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005).

### A.    No Chapter 64 Hearing

In his first point, Brooks argues that the trial court erred by not holding an evidentiary hearing on his Chapter 64 motion. The State counters that Brooks was not entitled to a hearing. We agree with the State.

The court of criminal appeals and this court have both held that a trial court is not required to conduct a hearing to resolve whether a defendant is entitled to DNA testing under article 64.03. *See Ex parte Gutierrez*, 337 S.W.3d 883, 893 (Tex. Crim. App. 2011) ("Article 64.03 does not require any evidentiary hearing before the trial judge decides whether a convicted person is entitled to DNA testing."); *see also Whitaker v. State*, 160 S.W.3d 5, 8 (Tex. Crim. App.), *cert. denied*, 543 U.S. 864 (2004); *Jones v. State*, 161 S.W.3d 685, 689–90 (Tex. App.—Fort Worth 2005, pet. ref'd). Brooks does not present an argument as to why this court should diverge from this precedent, and we see no reason to do so. We overrule his first point.

### B.    The Trial Court's Denial of Chapter 64 Motion

In his second point, Brooks argues that he and Jane "did not have sex" on the night she was assaulted, that therefore identity is still an issue in this case, and that the trial court erred by not ordering DNA testing. Specifically, it seems that Brooks is arguing that results of Jane's sexual assault exam would reveal

6

that someone other than himself had intercourse with Jane the night she was assaulted. We conclude that Brooks has failed to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through the DNA testing he requested. *See Bell*, 90 S.W.3d at 308 ("Chapter 64 requires that identity 'was or is' an issue, not that future DNA testing could raise the issue [that a third party was present]. Appellant confessed to the murder. His identity was not at issue.").

Brooks's 2005 admission, by way of affidavit, acknowledged that he was in Jane's house the night of the sexual assault. In his affidavit he also admitted to acting out in a deranged rage and sexually assaulting Jane. He further admitted that he tied Jane to her bed, took her car and gun, and drove to Oklahoma City. These admissions are consistent with the evidence the State introduced at Brooks's initial trial and that it detailed in its response to Brooks's Chapter 64 DNA motion.

We hold that Brooks failed to establish in the trial court that there is a reasonable probability of a different outcome of his initial trial had the DNA testing he requested in his Chapter 64 motion been available at the time of trial. *See Ex parte Gutierrez*, 337 S.W.3d at 902 (holding that trial court did not err by denying request for DNA testing when the requested biological evidence would not overcome the overwhelming evidence of defendant's direct involvement in murder). We overrule Brooks's second point.

7

## IV. CONCLUSION

Having overruled both of Brooks's points on appeal, we affirm the trial court's order denying his request for DNA testing.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: GARDNER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 4, 2015